UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

INTERNATIONAL OUTDOOR, INC.,

        Plaintiff,

                                  Case No.  17-10335

vs.                              HON.  GEORGE CARAM STEEH

CITY OF TROY,

        Defendant.

_____/

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (DOC. 6)

Plaintiff International Outdoor, Inc. alleges that defendant City of Troy's Sign Ordinance, (Doc. 1-2), violates the First Amendment.  Count I alleges that the Ordinance constitutes an unconstitutional prior restraint.  Count II alleges that the Ordinance contains content based restrictions imposed without a compelling government interest, and therefore, is unconstitutional.  The matter is presently before the Court on defendant's motion to dismiss.  (Doc. 6).  Oral argument was held on June 26, 2017.  For the reasons stated below, defendant's motion is granted in part and denied in part.

## I. Background

Plaintiff, an outdoor advertising company, erects billboards throughout Southeast Michigan.  (Doc. 1 at PageID 3-4).  The billboards display "truthful commercial messages" and non-commercial messages including political speech.  (Doc. 1 at PageID 4).  Plaintiff "earns revenue by charging advertisers to display" these messages.  (*Id.*).

Defendant, a Michigan municipal corporation, regulates billboards and other signs through the Sign Ordinance in Chapter 85 of defendant's Code of Ordinances.  (Doc. 1 at PageID 2, 4).  Section 85.01.04(A) requires a permit for each sign, unless it meets one of several enumerated exceptions.  (Doc. 1-2 at PageID 18).  Billboards are considered "ground signs," which are defined as "[a] freestanding sign supported by one or more uprights, braces, or pylons located in or upon the ground and not attached to any building."  (Doc. 1-2 at PageID 17).  Ground signs are subject to specific zoning district regulations outlined in section 85.02.05(C).  (Doc. 1-2 at PageID 26-28).  These regulations set limits on a sign's size, height, and location.  (*Id.*).  Pursuant to section 85.01.08(B)(1), defendant's Building Code Board of Appeals may grant a variance to signs that do not comply with the requirements of the Ordinance.  (Doc. 1-2 at PageID 23).

Plaintiff sought to erect two digital billboards in a M-1 district. (Doc. 1 at PageID 5, 7). Plaintiff applied for a variance because the billboards did not meet the zoning district regulations of section 85.02.05(C)(5). (Doc. 1 at PageID7). The Building Code Board of Directors held a public hearing that spanned two meeting dates, and thereafter denied the variance. (Doc. 1 at PageID 8).

## II. Legal Standard

### A. Federal Rule of Civil Procedure 12(b)(1)

Defendant moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), arguing that plaintiff lacks standing. Defendant moves under the wrong rule. The Court, therefore, shall consider the argument under Fed. R. Civ. P. 12(b)(1). The Court is "bound to consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990). It is the plaintiffs' burden to demonstrate that the court has subject matter jurisdiction. *RMI Titanium Co v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996).

Motions to dismiss for lack of subject matter jurisdiction fall into two general categories: facial attacks and factual attacks." *United States v. Ritchie,* 15 F.3d 592, 598 (6th Cir.1994). "A *facial* attack is a challenge to

the sufficiency of the pleading itself. On such a motion, the court must take the material allegations of the petition as true and construed in the light most favorable to the non-moving party." *Id.* (emphasis in original). "A *factual* attack, on the other hand, is not a challenge to the sufficiency of the pleading's allegations, but a challenge to the factual existence of subject matter jurisdiction. On such a motion, no presumptive truthfulness applies to the factual allegations" and "the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.* (emphasis in original). Defendant's challenge to plaintiff's standing is a factual attack. Thus, no presumptive truthfulness applies to the factual allegations in the complaint. *Id.*

## B. Federal Rule of Civil Procedure 12(b)(6)

When a party attacks a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must decide whether the complaint states a claim upon which relief may be granted. Generally speaking, the court must construe the complaint in favor of the plaintiff, accept the allegations of the complaint as true, and determine whether the plaintiff's factual allegations present plausible claims. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 554-56 (2007). Even though a complaint need not contain "detailed" factual allegations, its "factual allegations must be enough to

raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007).

## III. Analysis

### A. Standing

The "constitutional minimum of standing contains three elements;" (1) an "injury in fact," (2) "a causal connection between the injury and the conduct complained of," and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotations and citations omitted).

Defendant construes the complaint to challenge only the provisions relating to permit requirement exceptions. Defendant asserts that plaintiff failed to satisfy redressability because, even if the exception provisions were struck down, the permit provision and specific zoning district requirements would bar plaintiff's billboards. Defendant's argument mirrors *Midwest Media Property L.L.C. v. Symmes Tp., Ohio*, 503 F.3d 456 (6th Cir. 2007). But *Midwest Media* differs from this case, because the plaintiff there challenged specific provisions of the township's sign regulations. Here, however, plaintiff challenges the entire Ordinance. Plaintiff's focus

on the exception provisions merely relates to their argument that the Ordinance is content based. Plaintiff's injury would be redressed if the Ordinance was struck down, and therefore, defendant's argument fails.

## B. Count II: Content Based Restriction

### 1. Applicable Standard

The parties disagree on which standard governs Count II. Plaintiff argues that the Ordinance is a content-based restriction, and therefore, under *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015), strict scrutiny applies. Defendant argues that plaintiff's claims relate to commercial speech, and therefore, the applicable standard is that set forth in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557 (1980). Neither case, however, provides a perfect parallel nor cleanly dictates which standard applies here. The Court, therefore, conducts an analysis of both lines of cases and, for the reasons stated below, finds that *Central Hudson* applies.

### a. Content-Based Restriction

"[A] government, including a municipal government vested with state authority, 'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Reed* 135 S. Ct. at 2226 (quoting *Police Dept. of Chicago v. Mosley,* 408 U.S. 92, 95 (1972)). Content based

laws are those that "target speech based on its communicative content" including "the topic discussed or the idea or message expressed." *Id.* at 2226-27 (internal citations omitted). Courts must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Id.* at 2227 (internal citations omitted). Examples of facial distinctions include "defining regulated speech by particular subject matter" or "its function or purpose." *Id.* Laws that are facially content neutral, but "cannot be 'justified without reference to the content of the regulated speech' or that were adopted by the government 'because of disagreement with the message [the speech] conveys'," are also considered content-based regulations. *Id.* (citing *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). Content-based laws "are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.* at 2226 (citing *R.A.V. v. St. Paul,* 505 U.S. 377, 395 (1992); *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.,* 502 U.S. 105, 115 (1991)).

In *Reed*, a city code prohibited the display of outdoor signs without a permit, but excepted 23 categories of signs, 135 S.Ct. at 2224, including; (1) temporary directional signs, defined "on the basis of whether a sign conveys the message of directing the public to church or some other

qualifying event;" (2) political signs, defined "on the basis of whether a

sign's message is designed to influence the outcome of an election;" and

(3) ideological signs, defined "on the basis of whether a sign

communicat[es] a message or ideas that do not fit within the Code's other

categories. *Id.* at 2227. The Supreme Court found that the city code "is

content based on its face" because "[t]he restrictions in the [ ] Code that

apply to any given sign [ ] depend entirely on the communicative content of

the sign." *Id.*

Plaintiff states that, pursuant to the Ordinance, ground signs require a

permit or variance, but there are numerous exceptions to this requirement.

Plaintiff specifically addresses exceptions for temporary signs, flags,

special event signs, and civic event signs.

Temporary signs are excepted under section 85.01.04(A)(5). The

Ordinance does not specifically define temporary signs. It does, however,

note that temporary signs "include, but are not limited to;"

> 1. For a single dwelling or building or vacant
>    land: an on-site real estate sign, advertising
>    the premise for sale, rent or lease.
>
> 2. For a single dwelling or building or vacant
>    land: an off-site real estate sign for the
>    purpose of providing direction to another
>    premise that is offered for sale, rent, or lease.

3. An on-site sign advertising an on-going garage, estate or yard sale.

4. An off-site sign for the purpose of providing direction to another premise that is having a garage, estate or yard sale, as long as the dates of the sale are clearly indicated on the sign.

5. Non-commercial signs, which contain non-commercial informational or directional messages.

6. Political signs.

7. Holiday or other seasonal signs.

8. Construction signs for buildings under construction.

Section 85.03.02(A).

Flags are excepted under section 85.01.04(A)(6). But the Ordinance does not except all flags. Section 85.03.05 dictates that

(A) The display of the flag of the United States of America or other political subdivision thereof shall not be regulated by this Chapter when attached to a structure or standardized flagpole.

(B) The display of not more than one flag, such as but not limited to, corporate, civic, social, cultural, church or club group shall be permitted if flown in conjunction with an American flag of equal or greater size.

Special Event signs are excepted under section 85.03.01(A), which states that "[s]igns advertising a Special Event may be allowed for events

that include, but are not limited to, grand openings, vehicle shows/displays, craft shows, benefit rummage/bake sales and festivals, as long as a Special Event Sign permit is issued." "Banners advertising civic events" are excepted under section 85.01.05(A)(2).

Plaintiff asserts that, as in *Reed*, the Ordinance is content-based because a sign's content must be evaluated in order to determine what provision applies.

Defendant argues that the Ordinance is not content-based because it distinguishes between ground signs and temporary signs based on display duration as opposed to message content. Defendant asserts that ground signs are permanent, while temporary signs are posted for a short period of time. To further this argument, defendant relies on the Ordinance's failure to define temporary signs. Without an explicit definition, defendant asserts that the Court should adopt the ordinary meaning of the word "temporary" and define temporary signs as those permitted for a limited time period. Defendant further points to section 85.03.02(B)(3), which imposes a 60 day time limit on temporary signs.

Defendant's argument fails. The Ordinance does not distinguish temporary signs on the basis of their display duration alone. The Ordinance lists eight examples of temporary signs in section 85.03.02(A),

enumerated on the basis of their message content, before stating the time restriction in section 85.03.02(B)(3).   Further, defendant ignores the exceptions for flags, special events, and civic events.  Even if temporary signs were excepted solely on the basis of their display duration, these three other categories of signs are excepted on the basis of their communicative content.  The language of the Ordinance "requires one to assess the sign's content to determine if it is exempt."  *Thomas v. Schroer*, __ F. Supp. 3d __ (2017), No. 13-cv-02987-JPM-cgc, 2017 WL 1208672, at *8 (W.D. Tenn. Mar. 31, 2017).  One cannot determine that a sign meets one of these exceptions without assessing the content of the sign to confirm that it is a flag or advertises a special or civic event.  Thus, the Ordinance is "content based on its face."  *Reed*, 135 S.Ct. at 2227.

### b. Commercial Speech

"[T]he degree of protection afforded by the First Amendment depends on whether the activity sought to be regulated constitutes commercial or non-commercial speech."  *Bolger v. Youngs Drug Prod. Corp.*, 463 US 60, 65 (1983).  Commercial speech can be subject to greater government regulation than non-commercial speech.  *City of Cincinnati v. Discovery Network Inc.*, 507 US 410, 426 (1993).  *See also Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 513 (1981); *Central Hudson Gas & Electric Corp.*

*v. Public Service Comm'n*, 447 U.S. 557 (1980).  Commercial speech "encompasses 'expression related solely to the economic interests of the speaker and its audience' and 'speech proposing a commercial transaction.'"  *Marras v. City of Livonia*, 575 F. Supp. 2d 807, 817 (E.D. Mich. 2008) (quoting *Rubin v. Coors Brewing Co.,* 514 U.S. 476, 493 (1995)).  "Non-commercial speech, on the other hand, involves ideological, political, religious, artistic, or scientific speech."  *Thomas*, 2017 WL 1208672, at *6 (citing *National Endowment for the Arts v. Finley*, 524 U.S. 569, 602-03 (1998).

Defendant argues that plaintiff's billboards are commercial speech because they display commercial messages and plaintiff receives money for displaying these messages.  Plaintiff, however, pleads that its billboards will offer both commercial and non-commercial, specifically political, speech.

Determining whether plaintiff's speech is commercial or non-commercial is crucial because it impacts which standard must be applied to analyze Count II.  Unfortunately, neither party makes a complete argument to address this issue.

Plaintiff assumes that, because it pleaded both commercial and non-commercial content-based speech, strict scrutiny applies pursuant to *Reed*.

The speech at issue in *Reed* was not explicitly labeled as commercial or non-commercial.  *See Thomas*, 2017 WL 1208672, at *7.  In subsequent decisions, however, courts recognized the speech as non-commercial, and limited *Reed*'s applicability to non-commercial speech.  *Thomas*, 2017 WL 1208672, at *7; n. 3.  *See also CTIA-The Wireless Ass'n v. City of Berkeley*, 139 F.Supp.3d 1048, 1061 (N.D. Cal. 2015) ("The Supreme Court has clearly made a distinction between commercial speech and noncommercial speech, . . . and nothing in its recent opinions, including *Reed*, even comes close to suggesting that that well-established distinction is no longer valid.").  Commercial speech, therefore, continues to be analyzed under *Central Hudson*, even if it is content-based.  *See id*. Plaintiff fails to consider this limitation, and does not make any assertions on what the Court should do regarding its commercial speech.[1]

Defendant, on the other hand, does not acknowledge the allegation regarding non-commercial speech.  Instead, defendant assumes that

---

[1] Plaintiff repeatedly classifies its speech as non-commercial.  The closest it comes to acknowledging that the Court should apply strict scrutiny to a combination of commercial and non-commercial speech is a citation to *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250 (11th Cir. 2005), in a footnote within their response brief.  In *Solantic*, the plaintiff owned a digital message board that displayed both commercial and non-commercial speech.  *Id.* at 1252.  The court found that the city's restriction was content based and applied strict scrutiny without addressing the commercial nature of the speech.  *Id.* at 1267.  Any attempt to read *Solantic* to apply strict scrutiny to all content-based speech is undermined by subsequent cases, including *Reed* and its progeny, which specifically limits the application of strict scrutiny to non-commercial content-based speech.

plaintiff's speech is entirely commercial, and therefore, even if it is content-based speech, it is subject to intermediate scrutiny pursuant to *Central Hudson.* Defendant does not provide any argument or precedent to explain why the pleaded combination of commercial and non-commercial speech should be considered as commercial speech alone.

The Court, therefore, must determine what standard applies to content-based speech that is both commercial and non-commercial. When speech contains "both commercial elements and political or social commentary, the line between commercial and noncommercial speech can be difficult to discern." *Adventure Commc'ns, Inc. v. Kentucky Registry of Election Fin.*, 191 F.3d 429, 441 (4th Cir. 1999). "When these elements are intertwined, the commercial or noncommercial character of the speech is determined by 'the nature of the speech taken as a whole.'" *Id.* (citing *Riley v. National Fed'n of the Blind of North Carolina, Inc.,* 487 U.S. 781, 796 (1988)). "Consideration of the full context of the speech is therefore critical." *Id.* (citing *Bolger,* 463 U.S. at 67–68). "Thus, if a communication, at bottom, proposes a commercial transaction, the fact that it contains some commentary about issues of public interest will not alter its nature." *Id.*

Plaintiff's application for a variance, (Doc. 1-3), indicates that the billboards will display ads, but also proposes dedicating one of every 32 ad slots to defendant for pro bono messaging.  (Doc. 1-3 at PageID 38).  The subject matter of plaintiff's commissioned ads is not clear, but, given that plaintiff is compensated for providing space on the billboard, the ads clearly relate to plaintiff's economic interests.  These paid ads constitute the vast majority of the billboards' speech.  The nature of plaintiff's billboards as a whole, therefore, indicates that the speech at issue here is properly classified as commercial speech.  As such, *Central Hudson*, not *Reed*, provides the applicable standard of review.

### 2. Hudson Analysis

"'[T]he proper approach to be taken in determining the validity of [a] restriction[] on commercial speech,' as articulated in *Central Hudson* considers (1) whether the commercial speech 'concerns lawful activity and is not misleading.  A restriction on otherwise protected commercial speech is valid only if it (2) seeks to implement a substantial governmental interest, (3) directly advances that interest, and (4) reaches no further than necessary to accomplish the given objective.'"  *Metromedia*, 453 U.S. at 507 (citing C*entral Hudson*, 447 U.S. at 563-66).

Neither party addresses the first factor. The Court finds that it is satisfied based on the above analysis classifying plaintiff's billboards as commercial speech as well as the allegation that such speech is "truthful." (Doc. 1 at PageID 4).

Defendant compares this case to *Metromedia* to support its assertion that the Ordinance is a valid restriction under the remaining three factors. The Ordinance was created to further traffic safety and aesthetic appearance. (Doc. 1-2 at PageID 16). *Metromedia* recognizes these as "substantial government goals." 453 U.S. at 508. The court further found that the ordinance at issue advanced these interests, ruling that "billboards are real and substantial hazards to traffic safety," *id.* at 509, and "by their very nature, wherever located and however constructed, can be perceived as an 'esthetic harm.'" *Id.* at 510. The same applies here, where defendant asserts that the permit requirement and limitations on size, height, and number of signs further these interests. Finally, defendant asserts that the Ordinance reaches no further than necessary because, as in *Metromedia*, it "has not prohibited all billboards." *Id.* at 508. It "allows onsite advertising and some other specifically exempted signs," and includes a variance provision. *Id.* The Court agrees with defendant's comparison to *Metromedia* and finds that the Ordinance is a valid

restriction on commercial speech.  The Court, therefore, grants defendant's motion to dismiss as it relates to Count II.

## C. Count I: Prior Restraint

"A prior restraint is any law 'forbidding certain communications when issued in advance of the time that such communications are to occur.'" *McGlone v. Bell*, 681 F.3d 718, 733 (6th Cir. 2012) (quoting *Alexander v. United States*, 509 U.S. 544, 550 (1993).  "Any system of prior restraints of expression [bears] a heavy presumption against its constitutional validity, and a party who seeks to have such a restraint upheld thus carries a heavy burden of showing justification for the imposition of such a restraint." *Cnty. Sec. Agency v. Ohio Dep't of Commerce,* 296 F.3d at 477, 485 (6th Cir.2002) (quoting *New York Times Co. v. United States,* 403 U.S. 713, 714 (1971)).  The Supreme Court has recognized "two evils that will not be tolerated."  *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990). "First, a scheme that places 'unbridled discretion in the hands of a government official or agency.'"  *Id.* (quoting *City of Lakewood v. Plain Dealer Pub. Co.*, 486 U.S. 750, 757 (1988)).  Laws "'subjecting the exercise of First Amendment freedoms to the prior restraint of a license' must contain 'narrow, objective, and definite standards to guide the licensing authority.'"  *Forsyth Cty., Ga. v. Nationalist Movement*, 505 U.S. 123, 131

(1992) (quoting *Shuttlesworth v. City of Birmingham Ala.,* 394 U.S. 147, 150–151 (1969)).  "The reasoning is simple: If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted."  *Id.* (internal quotations and citations omitted).  "Second, a prior restraint that fails to place limits on the time within which the decisionmaker must issue the license is impermissible."  *FW/PBS, Inc.*, 493 U.S. at 226 (internal citations omitted).

The Ordinance imposes a prior restraint because the right to display a sign depends on approval in either the form of a permit from the Troy Zoning Administrator, or a variance from the Troy Building Code Board of Appeals.  Plaintiff makes two arguments regarding the validity of this prior restraint.  First, it asserts that the Ordinance grants unbridled discretion. Defendant argues that there is no such unbridled discretion because the variance procedure is guided by three factors provided in section 85.01.08(B)(1), which states:

> The Board of Appeals has the power to grant specific variances from the requirements of this Chapter, upon a showing of each of the following:

> a. The variance would not be contrary to the public interest or general purpose and intent of this Chapter; and
>
> b. The variance does not adversely affect properties in the immediate vicinity of the proposed sign; and
>
> c. The petitioner has a hardship or practical difficulty resulting from the unusual characteristics of the property that precludes reasonable use of the property.

Plaintiff responds that the Ordinance gives unbridled discretion, even with these factors, because they are vague and meaningless and do not meet the "narrow, objective, and definitive" criteria required. *Forsyth*, 505 U.S. at 131. Defendant does not articulate why section 85.01.08(B)(1) is narrow, objective, and definitive. It does not define arguably objective concepts like public safety or adverse effects. It does it state how the Board of Appeals determines whether these factors are met. Finally, it does not state that a variance shall be issued upon a showing of all three factors. The Ordinance merely states that the Board "has the power" to grant a variance upon such a showing, suggesting that, even if the factors are met, the Board may decline a variance.

Second, plaintiff asserts that the Ordinance section on variances is invalid because it does not impose time limits. Defendant argues that if an ordinance is content neutral, *Freedman*'s time limit requirements are not

applicable. *Truckor* 283 Mich. App. 154, 169-70 (2009) (citing *Solantic*, 410 F.3d at 1270; *Covenant Media of South Carolina, LLC v. North Charleston*, 493 F.3d 421, 431 (4th Cir. 2007)). But, as described above, the Ordinance is not content neutral. As such, defendant's argument fails.

Defendant's motion to dismiss, therefore, is denied as it pertains to Count I.

## D. Severability

"Severability of a local ordinance is a question of state law. . . ." *City of Lakewood*, 486 U.S. at 772. "The doctrine of severability holds that statutes should be interpreted to sustain their constitutionality when it is possible to do so." *Pletz v. Secretary of State,* 125 Mich. App. 335, 375 (1983). "Whenever a reviewing court may sustain an enactment by proper construction, it will uphold the parts which are separable from the repugnant provisions." *Id.* "To be capable of separate enforcement, the valid portion of the statute must be independent of the invalid sections, forming a complete act within itself." *Id.* Courts must "refrain from invalidating more of [a] statute than is necessary," *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984), and "must retain those portions of the Act that are (1) constitutionally valid, (2) capable of functioning independently, and (3) consistent with Congress' basic objectives in enacting the statute."

*United States v. Booker*, 543 U.S. 220, 258-59 (2005) (internal citations and quotations omitted).

Defendant sees the complaint as a challenge to the Ordinance's exception provisions, as opposed to a challenge to the entire Ordinance. As such, if these provisions are found invalid, defendant asks the Court to sever them, and dismiss plaintiff's case because the general height and size restrictions will stand alone to block plaintiff's billboards.  Plaintiff responds that the valid portions of the Ordinance are not independent of the invalid sections and cannot form a complete act.  Plaintiff concludes, therefore, that the invalid sections cannot be severed.

As described above, defendant's motion to dismiss shall be granted in regards to Count II.  As such, the question of severability no longer pertains to the exception provisions, but instead, solely to the variance provision challenged in Count I.   This provision cannot be severed because "[i]t is not clear that the legislature would have enacted the [Ordinance], complete with its permit requirement and restrictions on form," without the variance procedure.  *Solantic*, 410 F.3d at 1269.  "The legislature might have preferred not to impose these regulations on any signs if doing so meant that all signs would be subjected to" the permit requirement without a variance procedure.  *Id.*  It is not clear that the

Ordinance's permit requirement and variance procedure are "so inseparable in substance that it can be said that the legislature would have passed the one without the other." *Id.* As such, defendant's motion to dismiss is denied in regards to Count I.

## IV. Conclusion

For the reason's stated above, defendant's motion to dismiss is GRANTED IN PART AND DENIED IN PART. Count II is dismissed. Count I remains.

IT IS SO ORDERED.

Dated: June 30, 2017

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 30, 2017, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---